IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WORKERS UNITED,**<br>*Plaintiff,*<br><br>**v.**<br><br>**STARBUCKS CORPORATION,**<br>*Defendant.* | **CIVIL ACTION**<br><br>**NO. 26-2202** |

**MEMORANDUM RE: DEFENDANT'S MOTION TO TRANSFER**

**BAYLSON, J.** **November 16, 2026**

## I. INTRODUCTION

Plaintiff Workers United brings three counts of declaratory judgment against Defendant Starbucks Corporation: non-infringement of trademarks, non-dilution of trademarks, and non-infringement of copyrights. ECF 26, First Amended Complaint ("FAC"). Before the Court is Defendant's Motion to Transfer this action to the United States District Court for the Southern District of Iowa pursuant to 28 U.S.C. § 1404(a). ECF 63 ("Motion" or "Mot."). For the following reasons, the Motion is **DENIED**.

## II. FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Plaintiff is a labor union representing over 12,000 Starbucks workers across the United States. FAC ¶¶ 1, 3. Defendant is a corporation engaged in the retail operation of restaurants throughout the United States. Id. ¶ 4. The parties' dispute centers on Plaintiff's use of the Starbucks name and a variant of its logo.[1]

[1] A comprehensive factual background is set forth in the Court's October 2, 2026 Memorandum denying Defendant's Motion to Dismiss. ECF 55.

On October 13, 2023, Starbucks emailed Workers United a cease-and-desist letter addressed to its Philadelphia office. Id. ¶ 37 & Ex. D. On October 18, 2023, Starbucks filed suit against SEIU[2] in the Southern District of Iowa asserting seven causes of action for copyright infringement, trademark infringement, and trademark dilution, arising from the use of the Starbucks name and a variant of its logo. Id. ¶ 43–44. On the same day, Workers United sued Starbucks in the Eastern District of Pennsylvania, seeking a declaratory judgment of non-infringement. Id. ¶ 46. On January 31, 2025, both parties voluntarily dismissed their pending lawsuits without prejudice to facilitate negotiations. Id. ¶ 49. Although negotiations continued throughout 2025 and early 2026, the parties were unable to reach a collective bargaining agreement or resolution of the copyright and trademark issues. Id. ¶¶ 48, 55. On April 3, 2026, Workers United filed the pending declaratory judgment action before this Court. Id. ¶ 56. On June 18, 2026, Starbucks sued Workers United in the Southern District of Iowa (the "Iowa Action"). Id. ¶ 57.

On October 2, 2026, the Court denied Defendant's Motion to Dismiss. ECF 55. On October 6, Defense counsel informed the Court by letter that it intended to file a motion to transfer this case for consolidation with the Iowa Action. The Court held a pretrial teleconference pursuant to Rule 16, Federal Rules of Civil Procedure on October 7 and entered a scheduling order on October 8. ECF 57–59.

On October 15, Defendant filed its Motion to Transfer. ECF 63. On October 29, Plaintiff filed its Response in Opposition. ECF 76 ("Opposition" or "Opp."). On November 9, Defendant

---

[2] Service Employees International Union, which became affiliated with Workers United in 2009 and has used the Workers United name since that time. FAC ¶ 7. On November 10, 2023, Starbucks amended its complaint, naming Workers United as a defendant. FAC ¶ 45.

filed its Reply in support of its Motion. ECF 82 ("Reply"). On November 11, Plaintiff filed a Motion for Leave to File Sur-Reply in Opposition to Defendant's Motion. ECF 86. On November 12, the Court heard oral argument on Defendant's Motion.

## III. PARTIES' CONTENTIONS

### A. Defendant's Motion

Defendant argues that the public and private interests favor transfer to the more-inclusive Iowa Action. Mot. at 3. Defendant contends that the private interests favor Iowa because that is where the disputed conduct primarily occurred and where the material nonparty witnesses and evidence are located. Id. at 11–14. Defendant argues that Iowa is the center of Plaintiff's manufacturing, sale, and distribution of allegedly-infringing merchandise, and that its sole manufacturers—Dignity Apparel and Image Pointe—are headquartered there. Id. at 3. As a result, Defendant contends that there are several non-parties based in Iowa that will have critical testimony but will be outside this Court's subpoena power. Id. at 5. Defendant argues that where, as here, the significant operative facts did not occur in the chosen forum, Plaintiff's choice of forum warrants less deference. Id. at 12. As for the public factors, Defendant argues that the Iowa Action is the only action that can resolve the parties' entire controversy, avoid duplicative proceedings and inconsistent rulings, conserve judicial and party resources, and serve Iowa's local interest. Mot. at 15–17.

### B. Plaintiff's Response in Opposition

Plaintiff contends that Defendant's motion fails at the first step because Starbucks fails to demonstrate that this case "might have been brought" in the Southern District of Iowa. Opp. at 10. Plaintiff argues that no Iowa court would have personal jurisdiction over Starbucks in this case, and that this analysis must be made without regard to Starbucks's consent or waiver. Id. at

10–12. Plaintiff contends that Iowa lacks general personal jurisdiction over Starbucks, and that its relevant suit-related conduct is instead directed at this District where Starbucks sent the cease-and-desist letter that prompted the parties' 2023 dispute. Id. at 12. Plaintiff also argues that no "substantial part" of the parties' dispute occurred in the Southern District of Iowa and therefore venue is improper under Section 1391(b)(2). Instead, Plaintiff argues that the Eastern District of Pennsylvania is the district with the strongest connection to this dispute because it is the locus of allegedly infringing decision making. Id. at 13–17. As to the private factors, Plaintiff argues that Defendant has not met its burden to override Plaintiff's choice of venue. Id. at 17–19. Plaintiff argues that the dispute is about Workers United's overall campaign, of which merchandizing plays a small role. Because Workers United is headquartered in Philadelphia, and its campaign managed in Pennsylvania, the claims in this case arose in Pennsylvania, not Iowa. Id. at 19–22. Regarding convenience, Plaintiff argues that all-party convenience favors this District and that transfer to Iowa would only improperly shift inconvenience from Starbucks to Workers United. Id. at 22–23. As to the public factors, Plaintiff argues that Starbucks public-interest argument rests on the flawed premise that the Iowa Action will proceed despite Workers United's pending motion to dismiss. Id. at 26–27. Plaintiff contests that possible application of Iowa law in the Iowa Action does not necessitate transfer, because there is no component of Starbucks's state-law theory that turns on a unique state-law issue. Id. at 28.

**C. Defendant's Reply Brief**

In Reply, Defendant contends that the Iowa court is a proper venue and could exercise personal jurisdiction over Starbucks because Plaintiff's declaratory-judgement action is based on Starbucks's 2023 infringement suit filed in the Southern District of Iowa. Reply at 2–7. Defendant contests that the existence of a related action in another district is a sound reason

favoring transfer even where it conflicts with Plaintiff's chosen forum. Id. at 8–9. Defendant reiterates that Plaintiff's choice of forum is entitled to less deference here because substantial relevant conduct occurred in Iowa and only the Iowa Action will resolve the entirety of the parties' dispute. Id. at 8–9. Defendant argues that the Court should look toward the location of the prior enforcement action, the location of infringement, and Plaintiff's substantial Iowa contacts to determine where Plaintiff's declaratory-judgment claims arose. Id. 9–12.

## V. DISCUSSION

A district court may transfer a case "[f]or the convenience of parties and witnesses, in the interest of justice" to a district where the case might have been brought. 28 U.S.C. § 1404(a). "The decision to transfer a case under § 1404(a) rests within the sound discretion of a district court." Koeller v. Pilot Travel Centers, LLC, 2023 WL 3250512, at *2 (D.N.J. May 4, 2023) (citing Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir. 1973)).

"It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice . . . should not be lightly disturbed." Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970). The moving party bears the burden to show transfer is warranted. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). In determining whether transfer is warranted under § 1404(a), courts consider "the three [factors] enumerated under the statute—convenience of the parties, convenience of the witnesses, and the interests of justice—along with all other relevant private and public factors." In re McGraw-Hill Glob. Educ. Holdings LLC, 909 F.3d 48, 57 (3d Cir. 2018). The Third Circuit identified the

relevant private[3] and public factors[4] in Jumara. Under Jumara, the "essential question is whether a combination of other factors are sufficient to overcome the presumption that the plaintiff's preference governs." Edwards v. Equifax Info. Servs., LLC, 313 F. Supp. 3d 618, 622 (E.D. Pa. 2018). "[U]nless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." Shutte, 431 F.2d at 25. Here, it is not.

After considering all of the arguments as summarized above in the briefs and at the oral argument on November 12, 2026, counsel for both parties are complimented for being well prepared and articulate in making their arguments. However, the Court concludes that Plaintiff's choice of forum deserves the most weight in balancing the factors that the Court must apply under § 1404(a), and that the Motion to Transfer must be denied. See Caduceus, Inc. v. Univ. Physician Grp., 2024 WL 3319405, at *6 (D.N.J. July 3, 2024) (denying transfer motion because "Defendant has not carried its burden of showing why [Plaintiff's forum choice] should be pushed aside"). It is important to note, as acknowledged by counsel for Defendant, that the Third Circuit has not issued any opinion rejecting a district court's conclusion that relies heavily, as I do, on the Plaintiff's choice of forum. Further, as stated at the conclusion of the argument, a trial is possible in this court within a few months, and it is necessary for counsel, while a case is pending in this

---

[3] "The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses–but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." Jumara, 55 F.3d at 879 (internal citations omitted).

[4] "The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." Jumara, 55 F.3d at 879–80.

Court, to attempt settlement of this case, which arises after settlement discussions between the parties were unsuccessful.[5]

Defendant has not presented any relevant factors that are sufficient to overcome Plaintiff's choice of forum[6] and the fact that this case can be tried very promptly before this Court. Defendant did not introduce any evidence or argument that a trial in the Southern District of Iowa would take place as promptly as it can take place in this Court. Indeed, as of the date of the oral argument, Plaintiff's motion to dismiss Starbucks's Iowa Action, which was filed July 13, 2026, remains pending.

A supplemental Rule 16 order will be filed along with this Memorandum, setting forth dates for completion of pretrial discovery and any dispositive motions, and a trial date of April 5, 2027.

Also, as noted at the oral argument, Magistrate Judge Cinquanto is available and prepared to conduct serious settlement discussions in this case. The record does not show any settlement efforts proceeding in Iowa.

## VI. CONCLUSION

For the foregoing reasons, Defendant's Motion to Transfer is **DENIED.** Defendant's Motion for a Partial Stay of Discovery (ECF 70) and Plaintiff's Motion for Leave to File Sur-Reply (ECF 86) are **DENIED AS MOOT**. An appropriate **ORDER** follows.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 26\26-2202 Workers United v Starbucks\26-2202 Memorandum re Motion to Transfer.docx

---

[5] Although the parties differ in their characterization of their settlement negotiations, ECF 55 at 3 n.4, the parties were not previously able to reach resolution of their copyright and trademark issues. FAC ¶¶ 48, 55.

[6] As the Court noted during argument, Defendant's Motion seeks to transfer this action away from Philadelphia (where Plaintiff is headquartered, see Opp. at 3), which has a "long-standing reputation as a labor stronghold." Emily Scolnick, 'Philly Is a Union Town': How Labor Keeps Its Power and Status in Philadelphia, Billy Penn at WHYY (Apr. 27, 2026), https://billypenn.com/2026/04/27/philadelphia-labor-union-history-spread/ ("Philly is a union town.") (Exhibit A attached).

# EXHIBIT A

BILLYPENN at WHYY

NEWS

# ‘Philly is a union town’: How labor keeps its power and status in Philadelphia

*Union organizing is spreading across new corners of Philadelphia’s workforce, reinforcing the city’s long-standing reputation as a labor stronghold.*

by **Emily Scolnick**
April 27, 2026




Members and supporters of BJ32 SEIU rally in Center City Philadelphia on August 29, 2023. (Kimberly Paynter/WHYY)

*Love Philly? So do we. Let's be friends.* ***Sign up for the Billy Penn newsletter today.***

Union organizing is spreading across new corners of Philadelphia's workforce, reinforcing the city's long-standing reputation as a labor stronghold.

In the past five years, the intensity of labor organization has grown across the city, including six new unions forming at the University of Pennsylvania. Meanwhile, local workers at **Starbucks**, **World Cafe Live** and **Whole Foods** have unionized or walked off the job. Just last month, prosecutors in District Attorney Larry Krasner's office **announced intentions to unionize**, bringing the labor wave into city government.

Krasner declined to comment on the potential formation of the union itself in a statement, but noted that he is pro-union.

## A union town since 1794

The recent surge in local labor organization builds on centuries of union efforts in Philadelphia. The **first known union, first strikes and first strike funds in America all happened in the city**, and the network of labor support that has existed since is the reason people say "Philly is a union town."

Over 200 years since that first union of shoemakers formed in 1794, union members from across the city say their support networks, collective action efforts and relationships with city officials have helped labor keep its power in the city they call home.

"Working people have respect for unions in Philly," Robert Harris, vice president and legislative director of AFSCME DC 47, said. "We have grit here in Philadelphia. That's synonymous with union fights."

Thanks to their collective power, unions have become a strong local political force, said Maggie Mullooly, the communications director for the Philadelphia Council AFL-CIO. The American Federation of Labor and Congress of Industrial Organizations is considered an umbrella organization for Philadelphia labor, allowing the city's unions space to collaborate, share ideas and strategize politically.

"Candidates are always looking for our endorsements because they know that we are able to mobilize and engage our members to go to the polls," Mullooly said. She added that AFL-CIO has been working to cultivate that "union town" mentality among the workers it supports in multiple ways — not just with the t-shirts, stickers and signs present at every picket line.




Onetha McKnight, a PHL Airport wheelchair attendant and 32BJ SEIU member, shares her story during a rally on June 29, 2023. (Kristen Mosbrucker-Garza/WHYY)

"It's in the way that we show up for the city," she said. "When **I-95 collapsed**, right away, Gov. Josh Shapiro and the mayor made a concerted effort to ensure that union labor was the labor completing this job, because we know that they know that we work fast, we work hard, and we get the job done right the first time."

The highway **reopened after just 12 days** of round-the-clock work.

## 'Stronger and bolder than ever'

Some **argue that unions can give workers less individual autonomy** or create workplace tensions, while others **say that unions have undue political influence** that **can lead to corruption**. In 2024, John "Johnny Doc" Dougherty, a former union leader of Local 98 of the International Brotherhood of Electrical Workers started a six-year prison sentence for bribing a City Council member and embezzling funds from the union he led.

However, the sentiment towards labor in Philadelphia and nationally **is still largely positive**, and Philadelphia Council AFL-CIO President Danny Bauder added that the mentality of labor groups supporting each other was one of the most important principles for him when he assumed his role in 2023.

"In this moment, in 2026, unions in Philadelphia are stronger and bolder than ever before," he said. "Working people writ large in the city are really eager to organize and take their power."

He added that AFL-CIO aims to give every worker who wants one and is able to be in one a space in a union.

"All of us are fighting the same enemy," said Richard Hooker, the principal officer and secretary treasurer of **Teamsters Local 623**, said. Employers "want to dominate the workforce and extract as much profit as possible. Unions' responsibility is to fight back and ensure each member gets what they demand and deserve."

## 'We've earned that title'

Hooker also highlighted unions' positive relationships with city officials and representatives, including City Councilmember Jamie Gauthier and City Council Majority Leader Katharine Gilmore Richardson, who he said have supported workers in their struggles against employers.

"Philadelphia isn't just called a union town, we've earned that title," Gauthier wrote in a statement. "Here at City Council, everyday Philadelphians are our compass. Unions tell us what their members are facing and where City Hall can make a real difference. That direct relationship is how we've been able to move legislation that puts real rights, protections, and resources in workers' hands."



A giant inflatable cartoon fat cat in front of the Oregon Avenue UPS offices during a Teamsters Local 623 rally on July 20, 2023. (Kristen Mosbrucker-Garza/WHYY)

Richardson wrote in a statement that "organized labor is a beacon of hope and solidarity in an increasingly divided world."

"If we want Philadelphia to thrive, we must ensure the unions that power this city can thrive as well," she wrote.

Members of several labor organizations across Philadelphia said that when one union needs assistance — even if they aren't based in the city — other groups step up and promote collective action.

In 2023, when the **Writers Guild of America** and **SAG-AFTRA** each went on strike, halting film and television production, unions and actors in Philadelphia demonstrated their support. Multiple **rallies were held at City Hall** and included representatives of trade unions like the Teamsters, including one that featured

"Abbott Elementary" actors Sheryl Lee Ralph and Lisa Ann Walter, who spoke in support of the unions' efforts.

Unionized graduate students at the University of Pennsylvania **narrowly averted a strike** earlier this year, securing a historic contract after beginning negotiations in late 2024. A few days before the union's strike deadline, Teamsters UPS drivers **announced they would stand in solidarity** with the group and not deliver packages to Penn's campuses for the duration of a strike.

Briheem Douglass, the vice president of UNITE HERE Local 274, which represents hotel and food service workers across the city, said that his union plans to strike against hotels during the World Cup this summer if it is still fighting for a contract.

"We're really happy that other unions are taking an approach to strike when they need to for the members in the working class," he said, pointing to AFSCME District Council 33's **strike last summer**, when thousands of blue-collar city workers stopped work over pay negotiations. The strike lasted eight days and disrupted trash collection, 911 emergency dispatch, and other city services, which **affected and frustrated** many city residents. "It's a fabulous thing when folks come together and move together," Douglass added.

DC 47 also voted to authorize a strike last summer, but extended its negotiation period and **reached a contract** with the city before needing to join the picket lines.

"When one of us [is] fighting, all of us should be fighting," Hooker said. "Nobody's by themselves in the struggle."

© 2026 Billy Penn at WHYY